1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   MICHAEL ALONZO HARVEY, JR.,    )  Case No. 10cv02235 JAH(RBB)
                                    )
12                   Petitioner,    )  **REPORT AND RECOMMENDATION**
                                    )  **DENYING PETITION FOR WRIT OF**
13   v.                             )  **HABEAS CORPUS [ECF No. 1]**
                                    )
14   F. GONZALES et al.,            )
                                    )
15                   Respondents.   )
     _____ )
16

17       Petitioner Michael Alonzo Harvey, Jr., a state prisoner

18   proceeding pro se and in forma pauperis, filed a Petition for Writ

19   of Habeas Corpus on October 27, 2010, pursuant to 28 U.S.C. § 2254

20   [ECF Nos. 1, 3].[1]  First, Petitioner contends that relief is

21   warranted because the trial court erred in admitting evidence of

22   Harvey's parole status.  (Pet. 6, ECF No. 1.)  Second, Harvey

23   argues that there was insufficient evidence to support his

24   kidnapping for robbery conviction on the theory presented to the

25   jury.  (Id. at 9-10.)  Harvey also names Warden F. Gonzales and

26   Attorney General Edmund G. Brown, Jr. as Respondents.  (Id. at 1.)

27   _____

28       [1]  Because Harvey's Petition is not consecutively paginated,
     the Court will cite to it using the page numbers assigned by the
     electronic case filing system.

                                   1

On January 5, 2011, Respondent's Answer to Petition for Writ of Habeas Corpus was filed, including a Memorandum of Points and Authorities and a Notice of Lodgment [ECF No. 6].   The Attorney General of the State of California asserts that it is not a proper respondent and should therefore be dismissed.  (Answer 1 n.1, ECF No. 6.)   Warden Gonzales alleges that Harvey's claim for evidentiary error in ground one fails because it is unexhausted and does not present a federal question.  (Id. Attach. #1 Mem. P. & A. 2.)   The warden also asserts that ground two should be denied because there was sufficient evidence to support Petitioner's kidnapping conviction, and the state courts' rejection of his claim was not contrary to, or an unreasonable application of, federal law.  (Id. at 3.)

Harvey filed a Traverse on February 17, 2011 [ECF No. 7].  There, Petitioner concedes that he failed to exhaust the allegations in ground one, but asks the Court to still consider the merits of ground one or, in the alternative, stay his Petition so he may exhaust his state remedies.  (Traverse 1-3, ECF No. 7.)  Petitioner continues to assert that he is entitled to habeas relief for his claim in ground two.  (Id.)

The Court has reviewed the Petition, Respondent's Answer and lodgments, and Harvey's Traverse.   For the reasons discussed below, the Petition should be **DENIED**.

## I.   FACTUAL BACKGROUND

In March 2008, Virginia Rodgers, an escort, advertised her services on Craig's list.  (Lodgment No. 2, Rep.'s Tr. Appeal vol. 4, 199-200, Nov. 18, 2008.)  At approximately 2:30 a.m., on March 11, 2008, Rodgers received a phone call from a man who said his

2

name was, "Chris." (Id. at 201.)  Rodgers later identified him as
Michael Harvey. (Id. at 211.)  Harvey attempted to set up a date
with Rodgers, and he asked her to meet him at an apartment in El
Cajon, California. (Id. at 201-02.)  Rodgers agreed. (Id. at
202.)

Rodgers called her boyfriend, Marcel Crowel, to get a ride to
the apartment complex. (Id. at 203-04.)  Crowel did not know that
Rodgers was a prostitute and claims that he was unaware that he was
driving her to a date. (Id. at 204.)  Rodgers called Harvey a
couple of times to let him know she was on the way. (Id. at 202-
03.)  After arriving, Crowel parked his truck in the parking lot of
the complex; Rodgers had a difficult time locating Harvey's
apartment, so she called Harvey again, and he told her to meet him
by the pool area. (Id. at 205.)  Harvey arrived at the pool a few
minutes after Rodgers. (Id.)  As the two of them walked toward the
apartment, Harvey said, "You thought I was a trick.  I'm a pimp and
you know what this is." (Id. at 206.)  While Harvey said this, he
pulled out a gun, pointed it at Rodgers, and demanded money. (Id.)
When Rodgers told Harvey that she did not have any money, Harvey
replied, "Well, it's going to be a long night and we could go for a
ride.  It'd be a pimp with a dead ho on their hands." (Id. at
207.)

As the two of them approached apartment 128, Rodgers stopped
because she was afraid what might happen if she went inside
Harvey's apartment. (Id. at 208.)  She told Harvey that she had
some money in her car; they both began walking towards the parking
lot where Crowel was waiting in his truck for Rodgers, even though
Rodgers did not have any money in her vehicle. (Id. at 208-09.)

3

While they were walking, Rodgers asked Harvey why he was so angry and Harvey replied, "cause bitches like [Rodgers] disrespect the game.  We don't know what we are doing because we are independent." (<u>Id.</u> at 210.)  When Rodgers reached the sidewalk, she ran towards Crowel's car in an attempt to escape, but Harvey shot Rodgers as she ran, hitting the right side of her face.  (<u>Id.</u> at 210-11.) Despite being shot, Rodgers continued towards Crowel's truck.  (<u>Id.</u> at 212.)

Once Rodgers got into Crowel's truck, Crowel drove away. (<u>Id.</u>)  Rodgers told Crowel to drop her off at a gas station because she did not want to get him in trouble, as he was on parole.  (<u>Id.</u>) Crowel dropped Rodgers off next to a Shell gas station, where Rodgers told the gas station attendant, Roy Purcell, that she had been shot and needed help.  (<u>Id.</u> at 175, 213.)  Purcell noticed a large distortion on the right side of Rodgers's face and he called an ambulance.  (<u>Id.</u>)

As a result of the gunshot wound, Rodgers sustained a fractured jaw and her jaw was wired shut for two months.  (<u>Id.</u> at 215.)  On April 17, 2008, Rodgers positively identified Harvey in a photo lineup.  (<u>Id.</u> at 220-21.)  On the same day, Officer Bueno met Rodgers at the apartment, and Bueno measured the distance from the pool to apartment 128 as well as from the apartment to where Rodgers was shot.  (<u>Id.</u> at 231-33.)  The distance from where Harvey pulled a gun on Rodgers and where the shooting occurred was 689 feet, and the distance from where Harvey and Rodgers met by the pool to the parking lot was 697 feet.  (<u>Id.</u> vol. 5, 319, Nov. 19, 2008.)

4

1    The defense theory at trial was that Crowel shot Rodgers, not

2  Harvey, and that Crowel later cleaned his truck to hide the

3  evidence.  (Id. at 225-26; id. vol. 6, 610-11, Nov. 20 & 21, 2008.)

4  Defense counsel implied that Crowel was, in fact, Rodgers's pimp

5  and that Crowel shot her because she did not return to the truck

6  with his money.  (Lodgment No. 2, Rep.'s Tr. vol. 6, 615.)  The

7  trial court instructed the jury on the consent element of

8  kidnapping for robbery, but did not include a specific instruction

9  explaining withdrawn consent.  (Lodgment No. 1, Clerk's Tr. vol. 1,

10  69-70.)

11                    **II.   PROCEDURAL BACKGROUND**

12    On November 21, 2009, a jury found Harvey guilty of

13  premeditated attempted murder, kidnapping for robbery, and

14  attempted robbery.  (Id. at 79-85.)  Harvey was sentenced to state

15  prison for two life terms with the possibility of parole, plus

16  fifty years-to-life, and five years.  (Id. at 183-86.)

17    Harvey filed a notice of appeal on January 20, 2009.  (Id. at

18  187.)  The California Court of Appeal, Fourth Appellate District,

19  Division One, upheld Harvey's kidnapping for robbery and attempted

20  robbery convictions, but reversed his attempted murder conviction

21  because of an erroneous jury instruction.  (Lodgment No. 5, People

22  v. Harvey, No. D054498, slip op. at 17 (Cal. Ct. App. Sept. 24,

23  2009).)

24    Harvey appealed to the California Supreme Court on October 29,

25  2009.  (Lodgment No. 6, People v. Harvey, No. S177443 (Cal. filed

26  Oct. 29, 2009) (petition for review at 1).)  There, Harvey

27  challenged the sufficiency of the evidence to convict him of

28  aggravated kidnapping for robbery based on the instruction given to

the jury.  (Id. at 5.)  The California Supreme Court denied review

without opinion on December 2, 2009.  (Lodgment No. 7, People v.

Harvey, No. S177443, slip op. at 1 (Cal. Dec. 2, 2009).)  On

October 27, 2010, Harvey filed this Petition for Writ of Habeas

Corpus [ECF No. 1].

### III.   STANDARD OF REVIEW

Harvey's Petition is subject to the Antiterrorism and

Effective Death Penalty Act (AEDPA) of 1996 because it was filed

after April 24, 1996.  28 U.S.C.A. § 2244 (West 2006); Woodford v.

Garceau, 538 U.S. 202, 204 (2003) (citing Lindh v. Murphy, 521 U.S.

320, 326 (1997)).  AEDPA sets forth the scope of review for federal

habeas corpus claims:

> The Supreme Court, a justice thereof, a circuit
> judge, or a district court shall entertain an application
> for a writ of habeas corpus in behalf of a person in
> custody pursuant to the judgment of a State court only on
> the ground that he is in custody in violation of the
> Constitution or laws of the United States.

28 U.S.C.A. § 2254(a) (West 2006); see also Reed v. Farley, 512

U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th

Cir. 1991).

To present a cognizable federal habeas corpus claim, a state

prisoner must allege his conviction was obtained in violation of

the Constitution or laws of the United States.  28 U.S.C.A §

2254(a).  In other words, a petitioner must allege the state court

violated his federal constitutional rights.  Hernandez, 930 F.2d at

719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhald

v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).

A federal district court does "not sit as a 'super' state

supreme court" with general supervisory authority over the proper

6

1  application of state law.  Smith v. McCotter, 786 F.2d 697, 700

2  (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780

3  (1990) (holding that federal habeas courts must respect state

4  court's application of state law); Jackson, 921 F.2d at 885

5  (concluding federal courts have no authority to review a state's

6  application of its law).  Federal courts may grant habeas relief

7  only to correct errors of federal constitutional magnitude.

8  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989)

9  (stating that federal courts are not concerned with errors of state

10  law unless they rise to the level of a constitutional violation).

11      In 1996, Congress "worked substantial changes to the law of

12  habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

13  1997).  Amended section 2254(d) now reads:

14          An application for a writ of habeas corpus on behalf
            of a person in custody pursuant to the judgement of a
15          State court shall not be granted with respect to any
            claim that was adjudicated on the merits in State court
16          proceedings unless the adjudication of the claim --

17          (1)  resulted in a decision that was contrary to, or
            involved an unreasonable application of, clearly
18          established Federal law, as determined by the
            Supreme Court of the United States; or
19
            (2)  resulted in a decision that was based on an
20          unreasonable determination of the facts in light of
            the evidence presented in the state court
21          proceeding.

22  28 U.S.C.A § 2254(d).

23      The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003),

24  stated that "AEDPA does not require a federal habeas court to adopt

25  any one methodology in deciding the only question that matters

26  under section 2254(d)(1) -- whether a state court decision is

27  contrary to, or involved an unreasonable application of, clearly

28  established Federal law."  Id. at 71 (citation omitted).  A federal

court is therefore not required to review the state court decision de novo, but may proceed directly to the reasonableness analysis under § 2254(d)(1).  Id.

The "novelty" in § 2254(d)(1) is "the reference to 'Federal law, as determined by the Supreme Court of the United States.'" Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997) (emphasis in original deleted).  Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules." (Id.) "[A] state court decision may not be overturned on habeas corpus review, for example, because of a conflict with Ninth Circuit-based law." Moore, 108 F.3d at 264.  "[A] writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." Id. (citing Childress v. Johnson, 103 F.3d 1221, 1224-26 (5th Cir. 1997); Devin v. DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996); see Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996)).

Furthermore, with respect to the factual findings of the trial court, AEDPA provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e)(1).

## IV.  DISCUSSION

In his Petition, Harvey raises two grounds for relief.  In ground one, he claims that the trial court erred in admitting evidence of his parole status.  (Pet. 6-8, ECF No. 1.)  In ground

two, the Petitioner contends that there was insufficient evidence
to convict him of aggravated kidnapping for robbery under the
theory presented to the jury.  (Id. at 9-12.)

**A.   Respondent Edmund G. Brown, Jr.**

Harvey names both Warden Gonzales and former-Attorney General
Edmund G. Brown, Jr. as Respondents.  (Pet. 1, ECF No. 1.)
Respondent Gonzales argues that the Attorney General for the State
of California is an improper party and should be dismissed.
(Answer 1 n.1, ECF No. 6.)

On federal habeas review, a prisoner must name as respondent
the state officer who has custody of him.  Ortiz-Sandoval v. Gomez,
81 F.3d 891, 894 (9th Cir. 1996) (citing Rule 2(a), 28 U.S.C.A.
foll. § 2254).  Federal courts lack personal jurisdiction when the
petitioner fails to name a proper respondent.  See id.  Although
the warden is the typical respondent, "the rules following section
2254 do not specify the warden."  Id.  "[T]he 'state officer having
custody' may be 'either the warden of the institution in which the
petitioner is incarcerated . . . or the chief officer in charge of
state penal institutions.'"  Id. (citation omitted).  Nonetheless,
if a petitioner is in custody due to a state conviction he is
challenging, he must name the state officer who has official
custody of him as the respondent.  Id. (quotation omitted).

"[A] petitioner may not seek [a writ of] habeas corpus against
the State under . . . [whose] authority . . . the petitioner is in
custody.  The actual person who is [the] custodian [of the
petitioner] must be the respondent."  Ashley v. Washington, 394
F.2d 125, 126 (9th Cir. 1968).  This requirement exists because a
writ of habeas corpus acts upon the custodian of the state

1  prisoner, the person who will produce "the body" if directed to do
2  so by the court.  "Both the warden of a California prison and the
3  Director of Corrections for California have the power to produce
4  the prisoner."  <u>Ortiz-Sandoval</u>, 81 F.3d at 895.

5      Here, Harvey names Warden Gonzales, who is a proper
6  Respondent.  Former-Attorney General Edmund G. Brown, however, is
7  not a proper Respondent and should be **DISMISSED** with prejudice for
8  the reasons stated above.

9  **B.   <u>Ground One:  Evidentiary Error</u>**

10      The Petitioner alleges in ground one that the trial court
11  erred in admitting evidence that Harvey was on parole at the time
12  of the charged crimes, in violation of his due process right to a
13  fair trial. (Pet. 6, ECF No.1.)  In particular, Harvey's parole
14  agent at the time the crimes were committed was permitted to
15  testify at trial regarding whether Petitioner owned the telephone
16  that was used to call Rodgers. (<u>See</u> <u>id.</u> at 6-7.)  Because the
17  word, "parole," is inflammatory and prejudicial, Harvey contends
18  that the evidentiary error violates his federal constitutional
19  right to due process of law. (<u>Id.</u> at 6.)

20      In his Answer, Respondent Gonzales asserts that Harvey failed
21  to exhaust the claim because although he presented it on direct
22  appeal to the court of appeal, he did not raise the issue in his
23  petition to the California Supreme Court. (Answer Attach. #1 Mem.
24  P. & A. 2, ECF No. 6.)  Even if the Court considered the merits of
25  ground one, Respondent alleges, the claim fails because it does not
26  present a federal question. (<u>Id.</u>)

27
28

10

1. **Exhaustion**

Before a federal court may grant habeas relief on a claim, a petitioner must exhaust all available state judicial remedies. 28 U.S.C.A. § 2254(b)(1)(A); Rhines v. Weber, 544 U.S. 269, 273-74 (2005). A claim is exhausted only when a petitioner has fairly presented it to the state courts. Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275 (1971)). To meet the fair presentation requirement, the petitioner must "alert the state courts to the fact that he [is] asserting a claim under the United States Constitution." Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing Duncan, 513 U.S. at 365-66). The petitioner must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." Anderson v. Harless, 459 U.S. 4, 6 (1982) (citing Picard v. Connor, 404 U.S. at 276-77). By giving state courts the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights," comity is promoted, and disruption of state judicial proceedings is prevented. Duncan, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275); see also Rose, 455 U.S. at 518; Fields v. Waddington, 401 F.3d 1018, 1020 (9th Cir. 2005).

Constitutional claims raised in federal proceedings must be presented to the state courts first. Baldwin v. Reese, 541 U.S. 27, 31-32 (2004). A petitioner must provide the highest state court with a fair opportunity to consider the factual and legal bases of his claims before presenting them to the federal court. Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999) (citing Picard, 404 U.S. at 276; Johnson v. Zenon, 88 F.3d 828, 829 (9th

1  Cir. 1996); see also Duncan, 513 U.S. at 365; Scott v. Schriro, 567

2  F.3d 573, 582 (9th Cir. 2009); Davis v. Silva, 511 F.3d 1005, 1008

3  (9th Cir. 2008).  A claim is not exhausted if it is pending before

4  the state's highest court.  See Rose, 455 U.S. at 515 ("[A]s a

5  matter of comity, federal courts should not consider a claim in a

6  habeas corpus petition until after the state courts have had an

7  opportunity to act . . . ."); Anderson v. Morrow, 371 F.3d 1027,

8  1036 (9th Cir. 2004) ("AEDPA's exhaustion requirement entitles a

9  state to pass on a prisoner's federal claims before the federal

10 courts do so.").  "It follows, of course, that once the federal

11 claim has been fairly presented to the state courts, the exhaustion

12 requirement is satisfied." Picard, 404 U.S. at 275.

13      In his Traverse, Harvey concedes that he did not exhaust his

14 state court remedies as to ground one.  (Traverse 1-2, ECF No. 7.)

15 Nonetheless, Petitioner urges the Court to consider the claim on

16 the merits and grant him habeas corpus relief.  (Id.)

17 Alternatively, he requests that the Court give him leave to exhaust

18 the evidentiary error claim.  (Id. at 2.)  Gonzales and Harvey

19 therefore agree that Harvey failed to exhaust his evidentiary claim

20 for ground one because he did not raise the issue in his petition

21 to the California Supreme Court.

22      On January 20, 2009, the Petitioner filed a notice of appeal

23 with the California Court of Appeal.  (Lodgment No. 1, Clerk's Tr.

24 vol. 1, 187.)  In his appeal, Harvey argued that the trial court

25 erred in admitting evidence of his parol status, that there is

26 insufficient evidence to uphold Harvey's kidnapping for robbery

27 conviction on the theory presented to the jury, and that the court

28 gave improper jury instructions for attempted murder.  (Lodgment

1   No. 3, Appellant's Opening Brief at 1-2, <u>People v. Harvey</u>, No.

2   D054498 (Cal. Ct. App. filed May 26, 2009).)  The court of appeal

3   reversed the attempted murder conviction, but upheld the other

4   convictions.  (Lodgment No. 5, <u>People v. Harvey</u>, No. D054498, slip

5   op. at 17.)

6       Harvey then appealed to the California Supreme Court on

7   October 29, 2010.  (Lodgment No. 6, <u>People v. Harvey</u>, No. S177443

8   (petition for review at 1).)  There, Harvey alleged that his

9   kidnapping-for-robbery conviction should be reversed because there

10  was insufficient evidence and that the trial court failed to

11  provide the jury with an instruction on withdrawn consent.  (<u>Id.</u> at

12  5.)  Harvey did not raise the evidentiary error claim regarding the

13  trial court's decision to permit the admission of evidence of

14  Harvey's parole status.  The Petitioner failed to exhaust the

15  evidentiary error claim because he did not raise the issue with the

16  California Supreme Court, as required.  <u>See</u> <u>Weaver</u>, 197 F.3d at

17  364.

18      Nevertheless, the Court may deny an application for habeas

19  relief on the merits even if the petitioner has not yet exhausted

20  his state judicial remedies.  28 U.S.C.A. § 2254(b)(2).  "[A]

21  federal court may deny an unexhausted petition on the merits only

22  when it is perfectly clear that the applicant does not raise even a

23  colorable federal claim."  <u>Cassett v. Stewart</u>, 406 F.3d 614, 623-24

24  (9th Cir. 2005).  To that end, this Court will consider the merits

25  of ground one.

26      **2.  <u>Whether ground one should be denied on the merits</u>**

27      Harvey's allegation is that the trial court erred when it

28  allowed the introduction of evidence that Petitioner was on parole

at the time of the charged crimes because the word, "parole," is prejudicial. (Pet. 6, ECF No. 1.)  Harvey maintains that during the prosecutor's opening statement, the district attorney used the word "parole" repeatedly. (Id. at 7.)  Also, when Petitioner's parole agent at the time, Parole Agent Fonte, was ready to testify, the attorneys discussed with the trial court whether Fonte should be permitted to introduce himself as Harvey's then-parole agent. (See id.)  Harvey alleges that the trial judge agreed that the term "parole" was inflammatory, but when the district attorney told the judge about Fonte's limited availability, the judge allowed Fonte to inform the jury that he was Harvey's parole agent because it gave Fonte's testimony credibility. (Id.)  Thus, even if the judge did not permit Fonte to reveal that he was a parole agent, the jury was still tainted by the prosecutor's use of the word, "parole," during opening statements. (Id.)

Further, Harvey posits the people already had sufficient proof that the calls placed to Rodgers on the night of the incident were made from Harvey's telephone. (Id.)  Fonte's testimony was therefore cumulative because Petitioner had the phone on his person when he was arrested, and the people had an interrogation video in which Harvey and the interrogating officer discuss the phone because it kept ringing during the interrogation. (Id.)  Petitioner asserts that if the jurors were not informed of Harvey's parole status, the outcome would have been different. (See id. at 6-8.)  Petitioner insists that he was deprived of his constitutional right to a fair trial. (Id. at 6.)

The warden argues in his Answer that even if the Court considers the merits of Petitioner's unexhausted claim, the

allegation should be denied because it does not raise a federal question.  (Answer Attach. #1 Mem. P. & A. 2-3, ECF No. 6.) Respondent asserts that Harvey is challenging the state courts' application of the California Evidence Code, and Petitioner fails to reference the Constitution or any federal law.  (<u>Id.</u> at 3 (citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)).)

In his Traverse, Petitioner clarifies that his federal due process right to a fair trial was violated when the trial court allowed evidence of his parole status at trial.  (Traverse 1, ECF No. 7.)  Harvey maintains that the Court should consider the merits of his claim and grant him relief or stay his Petition so that he can exhaust his state remedies.  (<u>Id.</u> at 1-2.)

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." <u>Estelle</u>, 502 U.S. at 68; 28 U.S.C.A. § 2254(a).  Habeas relief is not available for an alleged error in the interpretation or application of state law.  <u>Estelle</u>, 502 U.S. at 67-68; <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991); <u>O'Bremski v. Maass</u>, 915 F.2d 418, 423 (9th Cir. 1990). To obtain federal habeas relief, a petitioner must allege a deprivation of federal rights.  <u>Kealohapauole v. Shimoda</u>, 800 F.2d 1463, 1465 (9th Cir. 1986).  "[F]ailure to comply with the state's rules of evidence is neither necessary nor a sufficient basis for granting habeas relief." <u>Jammal</u>, 926 F.2d at 919.

Indeed, if Harvey merely challenged the state court's application of state rules of evidence, he would not have alleged a deprivation of federal rights.  Yet, Petitioner explicitly asserts that the admission of evidence indicating that he was on parole at

the time of the incident deprived him of due process, which is a cognizable claim under § 2254.  (Pet. 6, ECF No. 1 (arguing that the evidentiary ruling violated his "rights 'to a fair and proper trial.'")); see Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983).  Therefore, the Court's inquiry is whether the state courts' rejection of Harvey's due process claim regarding the admission of evidence of his parole status was objectively unreasonable.

"The Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." Spencer v. Texas, 385 U.S. 554, 563-64 (1967).  "Denial of due process in a criminal trial 'is the failure to observe that fundamental fairness essential to the very concept of justice . . . . we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'" Kealohapauole, 800 F.2d at 1466 (citation omitted).  "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (citing Estelle, 502 U.S. at 67-68); see Karis v. Calderon, 283 F.3d 1117, 1129 n.5 (9th Cir. 2002); see also Lopes v. Campbell, 408 F. App'x 13, 16 (9th Cir. 2010).  Consequently, a habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

AEDPA further restricts this standard.  In Holley v. Yarborough, 568 F.3d 1091 (9th Cir. 2009), the Ninth Circuit determined:

16

Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court.  In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable.

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.  Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application."

Holley, 568 F.3d at 1101 (internal citations omitted); see also Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008).

When reviewing a state court decision, federal courts must look to the last reasoned state court decision as the basis of the judgment.  Polk v. Sandoval, 503 F.3d 903, 909 (9th Cir. 2007) (citing Benson v. Terhune, 304 F.3d 874, 880 n.5 (9th Cir. 2002)). Because Harvey did not present the evidentiary error claim to the state supreme court, as discussed, this Court will look to the appellate court's decision to determine whether it was "contrary to" or an "unreasonable application" of clearly established federal law.  See id.; see also Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"A state court decision is contrary to clearly established federal law if the state court either applies a rule that contradicts the governing law set forth by the Supreme Court or arrives at a different result when confronted by a set of facts that are materially indistinguishable from a decision of the

17

Supreme Court." Sims v. Rowland, 414 F.3d 1148, 1151 (9th Cir. 2005) (citing Williams, 529 U.S. at 405-06); see also Butler, 528 F.3d at 640.  A state court decision is an unreasonable application of federal law when it applies Supreme Court precedent in an objectively unreasonable manner, or unreasonably fails to extend the legal principles of a Supreme Court decision to situations which it should have controlled.  Sims, 414 F.3d at 1152 (citing Brown v. Payton, 544 U.S. 133, 141 (2005); Ramdass v. Angelone, 530 U.S. 156, 166 (2000)); see also Butler, 528 F.3d at 640.

When ruling on Harvey's direct appeal, the California Court of Appeal recited the following relevant facts:

> After his arrest, Harvey told investigators that he knew nothing about the shooting.  When investigators confronted Harvey with cell phone records showing that calls had been placed to Rodgers before the crime from his cell phone, he gave a variety of explanations, including that his cell phone had been lost or stolen. Before trial, the prosecutor informed the trial court that he intended to introduce Rodgers's and Harvey's cell phone records to prove that Harvey had spoken to Rodgers before the crime.  To undercut Harvey's defense that his cell phone had been lost or stolen, the prosecutor sought to introduce evidence from Harvey's parole agent, Mark Fonte, linking Harvey to the cell phone number used in the crime.
>
> When the prosecutor inquired whether he could disclose to the jury that Harvey was on parole when the shooting occurred, the trial court indicated that the relationship between Fonte and Harvey gave credibility to the exchange, but that it would consider a limiting instruction telling the jury not to speculate why Harvey was on parole.  Defense counsel argued that he would not challenge the credibility of Fonte's testimony, and suggested that the jury be told that Fonte was employed by the State of California.  Although the trial court found that the word "parole" was inflammatory, it concluded that "sanitiz[ing]" the information removed its credibility.  The trial court concluded that the probative value of the information outweighed any prejudice, but agreed to provide the jury with a limiting instruction.

18

When the prosecution called Fonte as a witness, defense counsel objected on relevance and Evidence Code section 352 grounds.  The trial court again concluded that the word "parole" added credibility and was not so inflammatory that it needed to be excluded.  Although defense counsel offered to work out a stipulation, and the trial court suggested taking the witness out of order to allow counsel the time to prepare a stipulation, the prosecutor rejected the suggestion because Fonte was ready to testify and had another appointment that day. Defense counsel moved for a mistrial after Fonte testified that he was a parole agent.  When the trial court denied the motion, defense counsel did not ask for a limiting instruction and the trial court did not provide one.  Fonte testified that one of his duties as a parole agent was to supervise Harvey, and that Harvey had given him a cell phone number sometime within a couple of weeks before the shooting that matched the number used to call Rodgers.

(Lodgment No. 5, <u>People v. Harvey</u>, No. D054498, slip op. at 3-5.)

The appellate court conceded that information regarding Harvey's parole status was prejudicial because it informed the jury that Harvey had been incarcerated at some point for an unknown crime.  (<u>Id.</u> at 5.)  Even so, the court found no error, stating the following:

While we may have handled the matter differently, such as encouraging the parties to work out a stipulation in the time they had before trial commenced, we cannot conclude that the trial court's ruling amounted to an abuse of discretion.  Harvey's status as a parolee, while prejudicial, did not tend to evoke an emotional bias against him as an individual apart from what the facts proved.  Although the prejudicial impact of this evidence could have been minimized by a limiting instruction, defense counsel neglected to remind the court to give such an instruction.  (Evid. Code, § 355 ["the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly"].)

Finally, although the general thrust of Fonte's testimony was cumulative of the testimony regarding the cell phone records, it provided additional context to assist the jury in understanding and evaluating the cell phone record testimony.  Moreover, Fonte's testimony was brief and did not unduly consume time.

Even assuming the trial court erred by permitting Fonte's testimony regarding Harvey's parole status, we conclude that reversal is not required since it is not reasonably probable that, absent the introduction of the challenged testimony, Harvey would have received a more favorable result. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Price* (1991) 1 Cal.4th 324, 440.) Evidence of Harvey's connection to the incident was overwhelming. Rodgers picked Harvey out of a photographic lineup and later identified him at trial. The cell phone records also corroborated her testimony regarding what transpired. Although Harvey denied knowing Rodgers, he repeatedly called her a "hooker" or "prostitute" when police interviewed him. He admitted to police that he lived in the same apartment complex that Rodgers's caller had directed her to on the morning of the shooting.

Defense counsel tried to take advantage of Rodgers's admission that she initially lied to the police about Crowel's involvement to suggest that Crowel had fired the shot that injured Rodgers from inside his truck. The police, however, interviewed Crowel, impounded the truck he used to drive Rodgers, and presumably ruled him out as a suspect. Rodgers also testified that Crowel did not shoot her. It is not reasonably probable Harvey would have obtained a more favorable result if the court had excluded the evidence regarding his parole status.

(Id. at 6-7.)

Because Harvey asserts that his right to a fair trial was violated, the Court must consider whether the admission of evidence that Petitioner was on parole at the time of the incident rendered the trial "fundamentally unfair." Jammal, 926 F.2d at 919. AEDPA requires federal courts to defer to a state court's decision when the Supreme Court does not "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court . . . ." Moses, 555 F.3d at 754. As discussed, the United States Supreme Court has not explicitly held that the admission of irrelevant and prejudicial evidence constitutes a due process violation warranting federal habeas relief. See Holley, 568 F.3d at 1101; Ochoa v.

1   <u>Harrington</u>, No. CV 09-8649-JHN(JEM), 2011 U.S. Dist. LEXIS 131909,

2   at *39 (C.D. Cal. Aug. 4, 2011).  Nor has the Supreme Court

3   expressed an opinion on whether a state law violates due process if

4   it permits the introduction of prior crimes evidence to show a

5   defendant's propensity to commit the charged offense.  <u>Estelle</u>, 502

6   U.S. at 75 n.5.  For this reason alone, it therefore cannot be said

7   that the appellate court's ruling was an unreasonable application

8   of clearly established federal law.  <u>Holley</u>, 568 F.3d at 1101.

9       Moreover, the evidence was relevant, and there were

10   permissible inferences the jury could have drawn from Fonte's

11   testimony.  <u>Jammal</u>, 926 F.2d at 920.  "Only if there are <u>no</u>

12   permissible inferences the jury may draw from the evidence can its

13   admission violate due process.  Even then, the evidence must 'be of

14   such quality as necessarily prevents a fair trial.'"  <u>Id.</u> (citation

15   omitted).  The prosecution introduced Officer Fonte's testimony to

16   show that the phone number from which the calls to Rodgers were

17   placed on the night of the incident matched Harvey's phone number.

18   (Lodgment No. 2, Rep.'s Tr. Appeal vol. 5, 314-18, Nov. 19, 2008.)

19   Fonte's testimony was necessary because during a police

20   interrogation, Harvey denied making the phone calls and claimed

21   that someone must have used his phone; he later said his phone was

22   stolen.  (<u>Id.</u> at 387.)  The trial court determined that evidence

23   that Fonte was Harvey's parole agent was necessary because it

24   affected the credibility of Fonte's testimony.  (<u>Id.</u> vol. 3, 111,

25   Nov. 17, 2008.)  The evidence also established how Detective Kale

26   was able to identify and locate Harvey to place him in a photo

27   lineup, which led to the positive identification by the victim.

28   (<u>Id.</u> at 110-111.)  While Fonte's testimony may have been

1   cumulative, it gave context to the phone records and helped dispel

2   any doubt as to the identity of the caller.

3       During his opening statement, the prosecutor told the jury

4   that Harvey had a "parole agent," and they would hear from "the

5   parole agent, Mark Fonte, in regards to phone information that he

6   got from the Defendant." (Id. vol. 2, 203, 205, Nov. 18, 2008.)

7   Defense counsel did not object. (See id.) Even if this evidence

8   was improperly admitted, Petitioner has not shown that the evidence

9   had a substantial and injurious effect on the jury's verdict so as

10  to render the trial fundamentally unfair. Plascencia v. Alameida,

11  467 F.3d 1190, 1203 (9th Cir. 2006); Jammal, 926 F.2d at 920.

12      Finally, the appellate court's rejection of Harvey's claim

13  challenging the failure to give a limiting instruction was also not

14  objectively unreasonable. "Instructional error will not support a

15  petition for federal habeas relief unless it is shown not merely

16  that the instruction is undesirable, erroneous, or even universally

17  condemned, but that by itself the instruction so infected the

18  entire trial that the resulting conviction violates due process."

19  Karis v. Calderon, 283 F.3d at 1132 (internal quotation marks

20  omitted). Harvey has not demonstrated that the court's failure to

21  give a limiting instruction and tell the jury not to draw any

22  inference from the references to Petitioner's parole status

23  rendered the entire trial fundamentally unfair. See id. Harvey's

24  parole status was not admitted to prove he had the propensity to

25  commit the current crime, and the court did not allow the

26  prosecutor to discuss the prior conviction which led to Harvey's

27  parole. The evidence against Petitioner was substantial. Rodgers

28  identified him during a photographic lineup, and her testimony was

corroborated by cell phone records.  (Lodgment No. 2, Rep.'s Tr.
Appeal vol. 5, 377, 383, Nov. 19, 2008.)  Although Harvey denied
knowing Rodgers, when the police interviewed him, he repeatedly
called her a "hooker" or "prostitute" and admitted that he lived in
the same complex where she was shot.  (Id. at 385, 388.)  Although
a limiting instruction would have been proper, it was not required
to preserve Harvey's due process rights.  See Basurto v. Luna, 291
F. App'x 41, 43 (9th Cir. 2008).

Accordingly, the state court's rejection of Petitioner's
evidentiary error claim in ground one was not contrary to, or an
unreasonable application of, clearly established federal law and
was not based on an unreasonable determination of the facts.  28
U.S.C. § 2254(d)(1)-(2).  Even though it is unexhausted, ground one
does not warrant federal habeas relief and should be **DENIED** on the
merits.

**C.   Ground Two:  Sufficiency of the Evidence**

Harvey was convicted of kidnapping for robbery with an
enhancement for the personal use of a firearm resulting in great
bodily injury.  (Lodgment No. 1, Clerk's Tr. vol. 1, 81); see Cal.
Penal Code §§ 209(b), 12022.53(d) (West 2012).  The Petitioner
argues in ground two that his due process rights were violated
because there was insufficient evidence to uphold his kidnapping-
for-robbery conviction.  (Pet. 11, ECF No. 1.)  Harvey contends
that this theory of kidnapping would have required the jury to find
he used force or fear after Rodgers withdrew her consent.  (Id. at
10.)  Petitioner challenges the trial court's failure to give the
jury the last bracketed paragraph of CALCRIM No. 1203, which would
have instructed them on withdrawn consent.  (Id.)

23

According to Harvey, there was insufficient evidence that he used force or fear to move Rodgers because she initiated the movement from the pool area to the apartment, as well as from the apartment to the vehicle. (See id. at 9-11.) Not once did Rodgers state that she went to the apartment because she was threatened or went there against her will, and her statement that she did not want to go inside the apartment does not indicate that she withdrew her consent to the movement. (Id. at 9-10.) Petitioner alleges that if Rodgers withdrew her consent, she did not do so until they reached the apartment and she stopped walking; a jury could not have concluded otherwise. (Id. at 9, 11.) Therefore, Harvey urges that his due process rights were violated because there was insufficient evidence to convict him based on a theory that was never presented to the jury. (Id. at 10.)

In response, Gonzales argues that the appellate court conducted a lengthy and detailed analysis of California law as to the elements to support a conviction of kidnapping for robbery. (Answer Attach. #1 Mem. P. & A. 7, ECF No. 6.) Additionally, Respondent contends that the court of appeal's reasoning is amply supported by the record. (Id.) Thus, Harvey cannot demonstrate the appellate court decision was contrary to, or an unreasonable application of, federal law. (Id.)

In his Traverse, Harvey argues that if no threat was made and the victim consented to the movement, Petitioner's conduct was merely robbery, but not kidnapping. (Traverse 3, ECF No. 7.) He points out that not once did the victim attempt to escape. (Id. at 4.) Petitioner argues that there was insufficient evidence to find him guilty beyond a reasonable doubt of two of the elements of the

crime – using force or fear to cause the other to move, and lack of consent.  (Id. at 4-5.)  Harvey reiterates that he never threatened Rodgers with force to get her to accompany him, demanded that she do so, or make her feel compelled to walk any distance; therefore, her movement could not be attributed to force or fear.  (Id.)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  The primary inquiry in a sufficiency-of-the-evidence claim is whether a rational trier of fact could have found proof of guilt beyond a reasonable doubt. Wright v. West, 505 U.S. 277, 290 (1992); Jackson v. Virginia, 443 U.S. 307, 324 (1979); Mikes v. Borg, 947 F.2d 353, 356 (9th Cir. 1991).  In making this determination, the court is not authorized "to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Jackson, 443 U.S. at 318-19 (quoting Woodby v. INS, 385 U.S. 276, 282 (1966).)  The court must view the evidence in the light most favorable to the prosecution and must presume the trier of fact resolved conflicting evidence in the prosecution's favor.  Wright, 505 U.S. at 296; Jackson, 443 U.S. at 319, 326; Taylor v. Stainer, 31 F.3d 907, 908-09 (9th Cir. 1994).  A state court's finding of sufficient evidence is given deference under AEDPA.  Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

**1.  Force or fear**

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991).  The

California Supreme Court denied review without opinion on December 2, 2009. (Lodgment No. 7, <u>People v. Harvey</u>, No. S177443, slip op. at 1.)   Therefore, the last reasoned state court opinion addressing the force or fear issue was rendered by the California Court of Appeal. (Lodgment No. 5, <u>People v. Harvey</u>, No. D054498, slip op. at 10.)   There, the court stated:

> Harvey claims that his conviction of kidnapping for robbery must be reversed because there was insufficient evidence that Rodgers's movement from the pool area to the apartment, or from the apartment to the parking lot, was the product of force or fear. He argues that, based on Rodgers's own testimony, she voluntarily took a few steps to the apartment before he displayed the gun and there is no evidence of lack of consent for this movement.  He also claims there is no evidence that he used force or fear to move Rodgers from the apartment to the parking lot because she initiated that movement. Harvey notes that the court did not instruct on withdrawal of consent and argues that the judgment cannot be affirmed on a theory for which the jury received no instructions.  We disagree.

> As a threshold matter, Harvey challenges only the force or fear element of kidnapping for robbery. Accordingly, we do not discuss the evidence supporting the remaining elements of the crime.

> Harvey correctly notes that the prosecutor did not divide the movement into two discrete segments.  Rather, the prosecutor argued that the asportation element of kidnapping was the movement from the pool area where Harvey drew his gun to where Rodgers was shot, a distance of over 600 feet.  Here, the attempted robbery and the kidnapping began after Harvey displayed his gun, demanded money and stated, "Well, it's going to be a long night and we could go for a ride. It'd be a pimp with a dead ho on their hands." (*People v. Camden* (1976) 16 Cal.3d 808, 814 [Even if "'the victim has at first willingly accompanied the accused, the latter may nevertheless be guilty of [kidnapping] if he subsequently restrains his victim's liberty by force and compels the victim to accompany him further.'"]; *People v. Trawick* (1947) 78 Cal.App.2d 604, 606 ["It is not necessary that the original accompaniment of the abductor be involuntary, if subsequently there is an enforced restraint of liberty"].)

> Harvey's action and statements were sufficient to put a person in fear for her personal safety.  A

26

1        reasonable jury could infer that *any* movement Rodgers
made *after* Harvey displayed his gun was based on his
2        implied threat of force.  The reasonableness of such an
inference is supported by Harvey's use of potentially
3        deadly force as soon as Rodgers attempted to escape.

4             . . . .

5        When all of the facts and circumstances are viewed
together and in the light most favorable to the judgment,
6        there is more than enough evidence from which a jury
could find Harvey guilty of kidnapping for purposes of
7        robbery.

8 (Id. at 9-10.)

9    In California, kidnapping for robbery consists of the

10 following elements:  (1) The defendant intended to commit the

11 robbery; (2) with that intent, the defendant used force or

12 instilled a reasonable fear to take or detain another person; (3)

13 using that force or fear, the defendant made the other person move

14 a substantial distance; (4) the other person was made to move a

15 distance beyond that merely incidental to the commission of the

16 robbery; and (5) the other person did not consent to the movement;

17 (6) the defendant did not reasonably believe that the other person

18 consented to the movement.  See People v. Curry, 158 Cal. App. 4th

19 766, 781, 70 Cal. Rptr. 3d 257, 270 (2007); see also Cal. Penal

20 Code § 209(b)(1).

21    Kidnapping generally must be against the victim's will.

22 People v. Hill, 23 Cal. 4th 853, 855, 3 P.3d 898, 899, 98 Cal.

23 Rptr. 2d 254, 255 (2000).  "[A] general act of kidnap[p]ing . . .

24 can only be accomplished by the use or threat of force."  People v.

25 Rhoden, 6 Cal. 3d 519, 527, 492 P.2d 1143, 1148, 99 Cal. Rptr. 751,

26 756 (1972).  Even if a victim's cooperation is first obtained

27 without force or threat of force, a defendant has committed

28 kidnapping if he "subsequently restrains his victim's liberty by

27

force and compels the victim to accompany him further." People v. Hovarter, 44 Cal. 4th 983, 1017, 189 P.3d 300, 325, 81 Cal. Rptr. 3d 299, 330 (2008); see People v. Trawick, 78 Cal. App. 2d 604, 606, 178 P.2d 45, 47 (Cal. App. 1947) (explaining that initially accompanying of the abductor need not be involuntary, so long as there is "an enforced restraint of liberty[]"). "[M]ovement is forcible where it is accomplished through the giving of orders which the victim feels compelled to obey because he or she fears harm or injury from the accused and such apprehension is not unreasonable under the circumstances." Hovarter, 44 Cal. 4th at 1017, 189 P.3d at 325, 81 Cal. Rptr. 3d at 330.

Here, the California Court of Appeal's rejection of Harvey's sufficiency-of-the-evidence claim was not contrary to, or an unreasonable application of, clearly established federal law. The evidence indicates that the kidnapping began once Harvey brandished his weapon, demanded money, and said to Rodgers, "Well, it's going to be a long night and we could go for a ride. It'd be a pimp with a dead ho on their hands." (See Lodgment No. 2, Rep.'s Tr. Appeal vol. 4, 207); Trawick, 78 Cal. App. 2d at 606, 178 P.2d at 47. Rodgers testified that Harvey was slightly in front of her and that both she and he walked from the pool area toward the apartment together before Harvey pulled out the gun. (Lodgment No. 2, Rep.'s Tr. Appeal vol. 4, 242-43.)

While Rodgers did move from the pool area toward the apartment before Harvey pulled his weapon, her continuing movement to the apartment was due to fear and the implied threat to keep moving. A reasonable person would not feel free to stop or deviate from the original course after Harvey brandished his weapon and made the

threat.  See Hovarter, 44 Cal. 4th at 1017, 189 P.3d at 325, 81
Cal. Rptr. 3d at 330.  Viewing the evidence in the light most
favorable to the prosecution, a rational trier of fact could have
found that Rodgers's continued movement toward Harvey's chosen
location – the apartment – was due to force or fear.

     Likewise, the movement from the apartment to the parking lot
occurred under the same implied threat of force.  Although Rodgers
initiated the movement to the parking lot, the record reflects that
she did so on Harvey's directive to produce money or else they
would "go for a ride" and there would be "a dead ho on [Harvey's]
hands." (Lodgment No. 2, Rep.'s Tr. Appeal vol. 4, 207.)  Rodgers
only moved to the parking lot because of Harvey's threat to produce
money or be shot. (Id. at 207-10.)  The fact that Rodgers did not
attempt to escape is not conclusive evidence that she consented to
stay; fear that Harvey would shoot her while walking to the
apartment or parking lot is a reasonable explanation for not
attempting to flee.

     For all of these reasons, a rational trier of fact could have
found Harvey guilty beyond a reasonable doubt of kidnapping for
robbery.  See Wright, 505 U.S. at 290; Jackson, 443 U.S. at 324;
Mikes, 947 F.2d at 356.  The court of appeal's rejection of
Harvey's sufficiency-of-the-evidence claim was therefore not
contrary to clearly established federal law.  Moreover, the state
court decision was based on a reasonable determination of the
evidence.

     **2.   Withdrawn consent**

     Petitioner also argues that the jury could not have based the
verdict on the fact that Rodgers did not consent to the movement

1  because the jury was never given a withdrawn consent instruction.

2  (Pet. 10, ECF No. 1; see Traverse 3-4, ECF No. 7.)

3       At trial, the jury was given the following instructions for

4  kidnapping for robbery:

5           The defendant is charged in Count Two with
            kidnapping for the purpose of robbery, in violation of
6           Penal Code section 209(b)(1).

7           To prove that the defendant is guilty of this crime,
            the People must prove that:
8
9           1.  The defendant intended to commit robbery;

10          2.  Acting with that intent, the defendant took,
            held, or detained another person by using force or by
11          instilling a reasonable fear;

12          3.  Using that force or fear, the defendant moved
            the other person or made the other person move a
13          substantial distance;

14          4.  The other person was moved or made to move a
            distance beyond that merely incidental to the commission
15          of a robbery;

16          5.  When that movement began, the defendant already
            intended to commit robbery; [¶] AND

17          6.  The other person did not consent to the
            movement.
18
19          As used here, substantial distance means more than a
            slight or trivial distance.  The movement must have
20          substantially increased the risk of physical or
            psychological harm to the person beyond that necessarily
21          present in the robbery.  In deciding whether the movement
            was sufficient, consider all the circumstances relating
22          to the movement.

23          To be guilty of kidnapping for the purpose of
            robbery, the defendant does not actually have to commit
24          the robbery.

25          To decide whether the defendant intended to commit
            robbery, please refer to the separate instructions that I
26          will give you on that crime.

27  (Lodgment No. 1, Clerk's Tr. Vol. 1, at 69-70.)

28

Harvey contends that the trial court should have included an additional instruction for withdrawn consent. (Pet. 10, ECF No. 1 (citing CALCRIM No. 1203).) CALCRIM No. 1203 provides:

> Consent may be withdrawn. If, at first, a person agreed to go with defendant, that consent ended if the person changed his or her mind and no longer freely and voluntarily agreed to go with or be moved by the defendant. The defendant is guilty of kidnapping if after the other person withdrew consent, the defendant committed the crime as I have defined it.

Judicial Council of Cal., 1 Judicial Council of California Criminal Instructions 1076, 1078 (Summer 2011 ed.) (CALCRIM No. 1203).

Because the California Supreme Court denied review without opinion, the last reasoned state court opinion addressing issue was that of the California Court of Appeal. Ylst, 501 U.S. at 805-06. When considering Harvey's arguments as to withdrawn consent, the appellate court stated:

> The trial court properly instructed the jury with CALCRIM No. 1203 addressing the elements of kidnapping for robbery, including that requirement that the victim "did not consent to the movement." Notably, Harvey does not argue on appeal that the trial court refused defense counsel's request for an instruction on the defense of consent or that the trial court had a sua sponte duty to instruct on this defense. (People v. Felix (2001) 92 Cal.App.4th 905, 911 [trial court has a sua sponte duty to instruct on the defense of consent if there is sufficient evidence to support it].) Because the trial court did not instruct on consent, there was no need for the prosecution to ask for an instruction on withdrawal of consent.

(Lodgment No. 5, People v. Harvey, No. D054498, slip op. at 10.)

"Courts have a duty to instruct on the defense's theory of the case 'if the theory is legally sound and evidence in the case makes it applicable.'" Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004) (citation omitted); see Matthews v. United States, 485 U.S. 58, 63 (1988). Even so, a criminal defendant has an

31

obligation to raise defenses on his own behalf.  See United States

v. Echeverry, 759 F.2d 1451, 1455 (9th Cir. 1985).  A defendant's

right to due process is protected when the trial judge gives jury

instructions that convey the defendant's theory of the case.

United States v. Romm, 455 F.3d 990, 1002 (9th Cir. 2006)

(quotation omitted).  Instructional error will not warrant federal

habeas relief unless it is shown that, by itself, the error so

infected the entire trial that the resulting conviction violates

due process.  Karis, 283 F.3d at 1132; see Estelle, 502 U.S. at 72

(noting that the instructional error must be considered in the

context of the trial record and the instructions as a whole).

In California, the court has a sua sponte duty to instruct on

a defense "if it appears that the defendant is relying on such a

defense, or if there is substantial evidence supportive of such a

defense and the defense is not inconsistent with the defendant's

theory of the case." People v. Maury, 30 Cal. 4th 342, 424, 68

P.3d 1, 60, 133 Cal. Rptr. 2d 561, 631 (2003); People v. Felix, 92

Cal. App. 4th 905, 911, 112 Cal. Rptr. 2d 311, 316 (2001).  Because

consent may be a defense to kidnapping for robbery, CALCRIM No.

1203 includes optional paragraphs to instruct on the withdrawal of

consent.  For withdrawn consent, the court will "[o]n request, if

supported by the evidence, also give the bracketed paragraph that

begins with 'Consent may be withdrawn.'"  Judicial Council of Cal.,

1 Judicial Council of California Criminal Instructions 1076, 1078

(CALCRIM No. 1203) (emphasis added).

At trial, the defense theory was that Harvey was not the

shooter.  (Lodgment No. 2, Rep.'s Tr. Appeal vol. 5, 225-26.)

Harvey's attorney inferred that Rodgers's boyfriend, Crowel, was

1  her pimp and shot Rodgers for failing to return from the date with

2  money.  (Id. at 615.)  Petitioner does not contend that although he

3  requested a withdrawn consent jury instruction, the court denied

4  his request.  Nor does he allege that he presented the consent

5  defense at trial, and the court therefore had a duty to sua sponte

6  instruct on withdrawn consent.  Because Harvey did not raise a

7  withdrawn consent defense, the court did not have a duty to sua

8  sponte instruct on withdrawn consent.  Even if the court erred, it

9  is not reasonably probable that Harvey would have obtained a more

10  favorable outcome had the error not occurred.

11       The state court of appeal rejected Harvey's claim that his

12  conviction could not be based on Rodgers's failure to consent to

13  her movement at the complex.  The court's decision was not contrary

14  to, or an unreasonable application of, clearly established Supreme

15  Court law.  Therefore, habeas relief on the basis stated in ground

16  two should be **DENIED**.

17                          **V.   CONCLUSION**

18       As discussed above, the former-attorney general is not a

19  proper Respondent and should be **DISMISSED** from the lawsuit.

20       Harvey's evidentiary error allegation in ground one of the

21  Petition was not presented to the California Supreme Court and is

22  therefore unexhausted.  Even so, the district court should DENY the

23  claim on the merits because the admission of evidence regarding

24  Harvey's parole status as trial did not render the entire

25  proceedings fundamentally unfair.  Although the Petitioner

26  exhausted the sufficiency-of-the-evidence claim in ground two, the

27  district court should also **DENY** this claim.  A rational trier of

28  fact could have found that Harvey moved the victim by force or

1   fear, and the trial court's failure to instruct the jury on

2   withdrawn consent did not render the entire trial fundamentally

3   unfair.  The state courts' rejection of both claims was not

4   contrary to clearly established federal law or based on an

5   unreasonable determination of the facts in light of the evidence.

6       This Report and Recommendation will be submitted to United

7   States District Court Judge John A. Houston, pursuant to the

8   provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

9   objections with the Court and serve a copy on all parties or before

10  March 16, 2012.  The document should be captioned "Objections to

11  Report and recommendation."  Any reply to the objections shall be

12  served and filed on or before March 29, 2012.  The parties are

13  advised that failure to file objections within the specified time

14  may waive the right to appeal the district court's order.  <u>Martinez</u>

15  <u>v. Yslt</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

16

17  Dated:  February 16, 2012

18                                        RUBEN B. BROOKS
                                          United States Magistrate Judge

19  cc: Judge Houston
        All Parties of Record

20

21

22

23

24

25

26

27

28